## UNITED STATES DISTRICT COURT
### FOR THE
### DISTRICT OF MAINE

|  |  |
|---|---|
| NICHOLAS A. GLADU,<br><br>        Plaintiff,<br><br>              v.<br><br>MAINE DEPT. OF CORRECTIONS, RYAN THORNELL, RANDALL LIBERTY, VICTORIA MATHIAU, and JACKIE WEDDLE,<br><br>        Defendants. | CIVIL ACTION NO.: 1:18-cv-00268-GZS |

## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Pursuant to Federal Rule of Civil Procedure 56(a), Defendants Maine Department of Corrections, Ryan Thornell, Randall Liberty, Victoria Mathiau, and Jackie Weddle, through their counsel, hereby move for summary judgment. The grounds for Defendants' motion are twofold:

1. Plaintiff failed to exhaust his available administrative remedies as to his claim that he was denied access to medical reference materials through outside mail, in violation of his First Amendment rights.

2. The Department of Corrections' policy of barring inmates from access to medical reference materials, except through consultation with facility medical providers, is reasonably related to legitimate penological interests, and is accordingly not an unconstitutional infringement on Plaintiff's right to receive mail.

## MEMORANDUM OF LAW

I.     **Factual Background and Procedural History**

Plaintiff Nicholas Gladu is a prisoner who has been incarcerated at Maine State Prison ("MSP"), a Department of Corrections ("Department") facility in Warren, Maine, since August 24, 2017 (Defs. SMF ¶ 1).

On May 28, 2018, and in accordance with the grievance procedure set forth by DOC Policy Number 29.1, Gladu challenged the refusal of MSP's librarian, Defendant Jackie Weddle, to provide him access to medical and mental health publications via interlibrary loan, specifically books pertaining to Osteomalacia[1] and Autism Spectrum Disorder (Defs. SMF ¶¶ 4–5). Grievance Review Officer Josh Black denied that grievance, indicating that the "[r]equest of any medical information needs to b[e] done by meeting with a medical provider" (Defs. SMF ¶ 7).

Gladu's first grievance appeal was denied, and his second appeal culminated in a Level III response from Department Commissioner Dr. Joseph Fitzpatrick (Defs. SMF ¶¶ 8–11). In denying Gladu's second appeal, Commissioner Fitzpatrick relied on Procedure E of Department Policy 21.2, which prohibits prisoners from possessing "material determined by the Chief Administrative Officer, or designee, to … constitute a threat to safety, security, or the orderly management of the facility," or that "facilitate[s] criminal activity" (Defs. SMF ¶ 3 & Ex. A). He explained that prisoners may only "receive medical information from a facility medical provider" because (a) "[a] prisoner attempting to do his … own research does not have the training to understand what he … is reading and how (or even if) it applies to the prisoner's particular situation," such that he may

---

[1] Osteomalacia refers to the marked softening of bones, most often caused by severe vitamin D deficiency. *See* Osteomalacia, Mayo Clinic, https://www.mayoclinic.org/diseases-conditions/osteomalacia/symptoms-causes/syc-20355514 (last accessed March 29, 2019).

make "demands for unnecessary testing and treatment"; and (b) "prisoners use medical research as a way to fake symptoms in order to obtain drugs" (Defs. SMF ¶ 12).

Subsequently, on July 6, 2018, Gladu filed a complaint, under 42 U.S.C. § 1983, alleging that Defendants had violated his First Amendment rights when Weddle denied him access to medical reference materials (Defs. SMF ¶ 18). After screening the Complaint under 28 U.S.C. §§ 1915(e)(2) and 1915A(a), Magistrate Judge John C. Nivison recommended that the district court dismiss the complaint (Defs. SMF ¶ 20). Judge Nivison reasoned that Gladu had "not cited, and research ha[d] not revealed, legal precedent establishing that the Constitution requires prison administrators to provide inmates with a medical reference library" (Defs. SMF ¶ 20). Judge Nivison also observed that even if there were any such obligation, Gladu had failed to allege "any facts that would support the conclusion that the lack of access to medical information ha[d] 'hindered' his ability to pursue a legal claim" (Defs. SMF ¶ 20).

Gladu thereafter filed an amended complaint, alleging specifically that his constitutional rights were violated when Weddle refused to facilitate access to medical reference materials via interlibrary loan, citing the aforementioned May 28, 2018 grievance (Defs. SMF ¶¶ 4, 21). Gladu also alleged, for the first time, that DOC maintained "a blanket ban on any and all medical or mental health reference material regardless of how that material is obtained, which presumably extends to materials received through the mail" (Defs. SMF ¶ 23). While he identified a variety of medical ailments he hoped to research for use in litigation, Gladu did not allege that he had ever attempted to obtain medical reference materials on those subjects—or on any subject—through outside mail (Defs. SMF ¶¶ 22, 24).

After screening the Amended Complaint, Judge Nivison recommended that all of Gladu's claims be dismissed, except for his "mail-related claim regarding his access to medical reference

material," because he could not yet determine whether such restriction was reasonably related to legitimate penological interests (Defs. SMF ¶ 25). The District Court (Singal, J.) adopted this recommended decision (Defs. SMF ¶ 26). Defendants now move for summary judgment on Gladu's mail-related claim.

## II.      Standard of Review

Summary judgment is appropriate when, based on the record before the court, it appears that there is no genuine dispute as to any material fact and the moving party is entitled to summary judgment as a matter of law. Fed. R. Civ. P. 56(a); *Gray v. Cummings*, 917 F.3d 1, 7 (1st Cir. 2019). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact, *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986), namely one that can be resolved in favor of either party and has the potential of affecting the outcome of the case, *Walker v. President & Fellows of Harvard Coll.*, 840 F.3d 57, 61 (1st Cir. 2016). Further, while "summary judgment is difficult to navigate as a *pro se* plaintiff[,] the pleading burden of the federal and local rules of civil procedure apply to represented and unrepresented parties alike." *Carlson v. Rent-A-Center, Inc.*, 237 F. Supp. 2d 114, 116 (D. Me. 2003).

## III.     Argument

### A.   Gladu failed to exhaust his administrative remedies because he never grieved his inability to obtain medical reference materials through outside mail.

Under the Prison Litigation Reform Act, a prisoner may not bring an action under § 1983 "until such administrative remedies as are available are exhausted" including, as relevant here, prison grievance procedures. *Jones v. Bock*, 549 U.S. 199, 218 (2007) (quoting 42 U.S.C. § 1997e(1)(A)). The exhaustion requirement is mandatory and applies "to all inmate suits about prison life, whether they involve general circumstances or particular episodes." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). It is an important means of both protecting the authority of Department

4

officials and promoting the efficient resolution of disputes, *see Woodford v. Ngo*, 548 U.S. 81, 89 (2006), and it serves as an affirmative defense to Gladu's First Amendment claims, *see, e.g., id.* at 85; *Ruffin v. Hinkley*, No. 2:17-cv-00151-NT, 2018 WL 3078745, at *4 & n.8 (D. Me. June 21, 2018), *adopted by* 2018 WL 3448209 (D. Me. July 16, 2018).

Gladu failed to exhaust his mail-related claim here. The May 28 grievance Gladu identifies in his Amended Complaint was a challenge to Weddle's refusal to facilitate access to certain medical reference materials from other libraries via interlibrary loan (Defs. SMF ¶ 4). Gladu's claim in his amended complaint, however, neither targets any MSP obligation to provide medical reference materials, nor concerns the interlibrary loan process. Rather, it centers on Gladu's perceived inability to obtain medical reference materials *on his own* through *outside mail*.

The May 28 grievance does not reference any such effort, nor is there a record of Gladu ever filing a related grievance (Defs. SMF ¶¶ 4–6, 17). In fact, there is no evidence (nor allegation, for that matter) that Gladu has ever even sought permission to obtain—or been prevented from obtaining—medical reference materials through outside mail. Prison officials have accordingly been deprived of the very opportunity to consider and respond to Gladu's claim that the PLRA exists to protect.

Gladu was not relieved of his duty to exhaust by the Commissioner's statement of the Department's medical reference material policy, either. A prisoner's obligation to pursue all available administrative processes and appeals persists regardless of the prospect for success. *See Woodford*, 548 U.S. at 85; *Booth v. Churner*, 532 U.S. 731, 741 & n.6 (2001). There is, in other words, no futility exception to the PLRA's exhaustion requirement. *Medina-Claudio v. Rodríguez-Mateo*, 292 F.3d 31, 35 (1st Cir. 2002); *see also Murphy v. Corizon*, No. 12-CV-00101-JAW, 2014 WL 2738668, at *7 (D. Me. June 17, 2014) (rejecting contention that exhaustion was unnecessary

where plaintiff was told that the dental fillings she sought would not be provided under any circumstances). Therefore, even if Gladu believed, based on the Commissioner's Level III response, that it was a settled issue that he could not obtain medical reference materials through the mail, his failure to grieve that issue precludes his § 1983 claim.

> B.  The Department's policy of limiting access to medical reference materials to those obtained through consultation with facility medical providers is reasonably related to legitimate penological interests, and did not infringe Gladu's constitutional rights.

The validity of practices that impinge on a prisoner's First Amendment rights, including those concerning incoming mail, turn on whether they are "reasonably related to a legitimate penological interests." *Thornburgh v. Abbott*, 490 U.S. 401, 409 (1989). That assessment is governed by the four-part test set forth by the Supreme Court in *Turner v. Safley*, 482 U.S. 78 (1987), namely "(1) whether there is a valid, rational connection between the regulation and the legitimate government interest put forward to justify it; (2) whether alternative means to exercise the right [at issue] exist; (3) the impact that accommodating the right will have on prison resources;" and (4) whether there is an "absence of alternatives to the prison regulation," *Kuperman v. Wrenn*, 645 F.3d 69, 74 (1st Cir. 2011). Consideration of each of these factors is colored by a recognition of the broad discretion that corrections officials retain over the administration of prisons, and the protesting inmate bears the burden of demonstrating unconstitutionality. *Overton v. Bazzetta*, 539 U.S. 126, 132 (2003).

With respect to the first *Turner* factor, Commissioner Fitzpatrick made clear that the limitation on prisoner access to medical reference materials is motivated by concern about prisoners demanding unnecessary medical testing and treatment and, more nefariously, learning how to mimic symptoms to obtain medication (Defs. SMF ¶ 12). The legitimacy of those interests—and the corresponding importance of not needlessly burdening medical staff; promoting

strong relationships between prison doctors and their patients; and combatting the proliferation of contraband (Defs. SMF ¶ 13)—is beyond dispute. *See, e.g., Rodriguez v. James*, 823 F.2d 8, 12 (2d Cir. 1987) ("The legitimacy of the state's interest in preventing fraud or profligacy by inmates, and thereby promoting the penological objectives of 'security, order, and rehabilitation,' cannot seriously be questioned." (quoting *Procunier v. Martinez*, 416 U.S. 396, 413 (1974))). The causal connection between these interests and limiting prisoner access to medical reference materials is likewise straightforward, and Gladu has at no point challenged that relationship. *See Beard v. Banks*, 548 U.S. 521, 531–32 (2006) (crediting view of deputy prison superintendent that regulations "serve[d] the function identified" because asserted connection was logical).

As to the second *Turner* factor, Gladu retains access not only to incoming mail as a general matter, *see Josselyn v. Dennehy*, 333 F App'x 581, 585 (1st Cir. 2009) (unpublished) (finding prisoner's access to other publications through the mail was a relevant alternative to the sexually explicit material he sought); *accord Thornburgh*, 490 U.S. at 417–18 (regulations permitted sufficient expression where they allowed "broad range of publications to be sent, received, and read"), but also to medical information through facility medical providers. Prisoners have the benefit of ready access to nurses and doctors who can not only discuss a prisoner's health needs and any conditions of concern, but who also can decode that information such that it is comprehensible to the average prisoner (*see* Defs. SMF ¶ 14).

Gladu does not claim to have ever attempted to obtain the information he seeks by consulting with MSP medical personnel. Instead, he asserts that the particular method of access he identifies—mail order—is essential to the exercise of his First Amendment rights. The availability of an alternate avenue for obtaining medical information (about Osteomalacia, Autism, and the

various other abnormalities that Gladu references in his amended complaint (*see* Defs. SMF ¶ 22)), demonstrates otherwise.[2]

As to the third *Turner* factor, the court is obliged to defer to "the informed discretion of corrections officials" concerning the impact of accommodating the right at issue, *Thornburgh,* 490 U.S. at 418, given their familiarity "with the difficulties of managing their own institutions," *Josselyn*, 333 F. App'x at 585. Here, Commissioner Fitzpatrick, based on the collective experience of prison officials, explained the serious dangers associated with accommodating requests like Gladu's. Specifically, and as noted above, he indicated that unfettered access to medical reference materials facilitates demands for unnecessary medical tests and treatment, which in turn overburdens doctors and strains their relationship with prisoners, and provides prisoners a playbook for obtaining otherwise-banned substances that can lead to a proliferation of contraband (Defs. SMF ¶¶ 12–13).

Finally, with respect to the fourth *Turner* factor, demonstrating the existence of a ready alternative to DOC's regulation is a high bar, the burden of which falls on Gladu's shoulders. *See Overton*, 539 U.S. at 136. Here, the decision to provide prisoners access to medical reference materials only through consultation with facility medical providers reflects a careful consideration of the risks involved, consistent with Policy 21.2, and Gladu has not suggested any reasonable, less-restrictive means of addressing the concerns that Commissioner Fitzpatrick identified. *See id*. at 136 (fourth *Turner* factor turns on "whether the prisoner has pointed to some obvious regulatory alternative that fully accommodates the asserted right while not imposing more than a *de minimis* cost to the valid penological goal"); *accord Kuperman*, 645 F.3d at 76–77.

---

[2] Granted, even if there were no other avenue for Plaintiff to obtain the information he seeks, that would "not be conclusive … [but] would [only] be some evidence that the regulation[ ] w[as] unreasonable." *Overton*, 539 U.S. at 135.

*Turner* aside, the limitation on Gladu's access to medical reference materials—and thereby, in his estimation, his ability to represent his interests in healthcare litigation and criminal proceedings (Defs. SMF ¶ 22)—also does not violate his right of access to the courts. As Judge Nivison noted in his decision, there is no extant legal precedent requiring prison administrators to provide access to a medical reference library (*see* Defs. SMF ¶ 20). Indeed, MSP is not required to help Plaintiff "*litigate effectively* once in court" at all. *Lewis v. Casey*, 518 U.S. 343, 354 (1996) (emphasis in original).

Moreover, for an inmate to have standing to assert a right of access claim, he must establish actual injury with respect to a non-frivolous appeal or claim. *See, e.g., Christopher v. Harbury*, 536 U.S. 403, 414–15 (2002); *Lewis*, 518 U.S. at 351–53; *Sowell v. Vose*, 941 F.2d 32, 34–35 (1st Cir. 1991). Gladu has not demonstrated how his ability to pursue amorphous "healthcare" litigation has been hindered, nor has he established any injury to his defense in his criminal case given (a) he has not identified how medical reference materials might assist that defense, and (b) he apparently has access to stand-by counsel, which precludes any right-of-access claim. *See Bourdon v. Loughren*, 386 F.3d 88, 94, 96 (2d Cir. 2004) ("[T]he assistance of an attorney … is a permissible and sufficient means of satisfying the right of access to the courts …."); *Moyston v. O'Mara*, No. 09-cv-0045-PB, 2009 WL 2854429, at *10 (D.N.H. Aug. 31, 2009) (representation of prisoner by New Hampshire public defender's office precluded right of access claim concerning closure of prison library).

In short, the Department's policy of limiting inmate access to medical reference materials through outside mail is an entirely sensible exercise of penological discretion. It is justified by the Department's strong and legitimate interest in promoting the delivery of efficient, effective medical care, and regulating access to controlled substances.

9

**IV.    Conclusion**

Summary judgment should be granted to Defendants. Gladu has failed to exhaust his only remaining claim, and even on the merits, the Department's policy of not permitting access to medical reference materials through outside mail is reasonably related to legitimate penological interests, and does not otherwise violate Gladu's constitutional rights.


DATED:  May 24, 2019                          Respectfully submitted,

                                              AARON M. FREY
                                              Attorney General

                                              /s/ Jason Anton
                                              Jason Anton, Asst. Atty. Gen.
                                              Jason.Anton@maine.gov
                                              Six State House Station
                                              Augusta, Maine 04333-0006
                                              Tel.  (207) 626-8800
                                              Fax (207) 287-3145

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on May 24, 2019, he electronically filed the above

document with the Clerk of the Court using the CM/ECF system. A copy of the above document

has also been placed in the mail, postage prepaid, directed to the following address:

Nicholas A. Gladu
MDOC# 21853
Maine State Prison
807 Cushing Rd.
Warren, ME 04964


Dated: May 24, 2019                         /s/ Jason Anton
                                            Jason Anton, Asst. Atty. Gen.
                                            Six State House Station
                                            Augusta, Maine 04333-0006
                                            Tel.  (207) 626-8800
                                            Fax (207) 287-3145
                                            Jason.Anton@maine.gov