UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

NICHOLAS A. GLADU,           )
                             )
        Plaintiff            )
                             )    1:18-cv-00268-GZS
v.                           )
                             )
MAINE DEPARTMENT OF          )
CORRECTIONS, et al.,         )
                             )
        Defendants           )

# RECOMMENDED DECISION ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Defendants Maine Department of Corrections, Ryan Thornell, Randall Liberty, Victoria Mathiau and Jackie Weddle, have moved for summary judgment in this action in which Plaintiff, an inmate at the Maine State Prison, alleges Defendants violated his constitutional rights because Defendants denied him access to certain medical literature. (Motion, ECF No. 27.)

Following a review of the summary judgment record and after consideration of the parties' arguments, I recommend the Court grant Defendants' motion for summary judgment.

## SUMMARY JUDGMENT STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "After the moving party has presented evidence in support of its motion for summary judgment, 'the burden shifts to the nonmoving party, with

respect to each issue on which he has the burden of proof, to demonstrate that a trier of fact reasonably could find in his favor.'" *Woodward v. Emulex Corp.*, 714 F.3d 632, 637 (1st Cir. 2013) (quoting *Hodgens v. Gen. Dynamics Corp.*, 144 F.3d 151, 158 (1st Cir. 1998)).

A court reviews the factual record in the light most favorable to the non-moving party, resolving evidentiary conflicts and drawing reasonable inferences in the non-movant's favor. *Perry v. Roy*, 782 F.3d 73, 77 (1st Cir. 2015). If a court's review of the record reveals evidence sufficient to support findings in favor of the non-moving party on one or more of the plaintiff's claims, a trial-worthy controversy exists, and summary judgment must be denied as to any supported claim. *Id.* ("The district court's role is limited to assessing whether there exists evidence such that a reasonable jury could return a verdict for the nonmoving party." (internal quotation marks omitted)). Unsupported claims are properly dismissed. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). "As to issues on which the summary judgment target bears the ultimate burden of proof," the non-moving party "cannot rely on an absence of competent evidence, but must affirmatively point to specific facts that demonstrate the existence of an authentic dispute." *McCarthy v. Northwest Airlines, Inc.*, 56 F.3d 313, 315 (1st Cir. 1995) (citing *Garside v. Osco Drug, Inc.*, 895 F.2d 46, 48 (1st Cir. 1990)).

**S**UMMARY **J**UDGMENT **R**ECORD

When presented with a summary judgment motion, a court ordinarily considers only the facts included in the parties' statements of material facts, which statements must be supported by citations to evidence of record. Federal Rule of Civil Procedure 56(c) and District of Maine Local Rule 56(b)-(d) require the specific citation to record evidence. In

addition, Local Rule 56 establishes the manner by which parties must present their factual statements and the evidence on which the statements depend. A party's pro se status does not relieve the party of the obligation to comply with the court's procedural rules.[1] *Ruiz Rivera v. Riley*, 209 F.3d 24, 27-28 & n. 2 (1st Cir. 2000); *Marcello v. Maine*, 489 F. Supp. 2d 70, 77 (D. Me. 2007).

By rule, a party seeking summary judgment must file, in addition to its summary judgment motion, a supporting statement of material facts setting forth each fact in a separately numbered paragraph, with each factual statement followed by a citation to evidence of record that supports the factual statement. D. Me. Loc. R. 56(b). A party opposing a motion for summary judgment must file an opposing statement in which it admits, denies, or qualifies the moving party's statements by reference to each numbered paragraph, with citations to supporting evidence, and in which it may set forth additional facts, in separately numbered paragraphs, with citation to supporting evidence. D. Me. Loc. R. 56(c). Here, in response to Defendants' motion and their supporting factual statements, Plaintiff filed a declaration addressing Defendants' argument regarding exhaustion of administrative remedies. (ECF No. 50.)

"Facts contained in a supporting … statement of material facts, if supported by record citations as required by this rule, shall be deemed admitted unless properly

---

[1] "[T]he Court is required to maintain a strict neutrality between opposing parties and even though a more forgiving reading may be appropriate for a pro se party in the summary judgment context, it is also true that '[j]udges and magistrate judges who review these filings must be able to rely on procedural rules so as to avoid becoming the lawyer for the unrepresented [party] or devoting an excessive portion of their time to such cases.'" *United States v. Baxter*, 841 F. Supp. 2d 378, 383 (D. Me. 2012) (quoting *Clarke v. Blais*, 473 F. Supp. 2d 124, 129 (D. Me. 2007)).

3

controverted." D. Me. Loc. R. 56(f). Additionally, "[t]he court may disregard any statement of fact not supported by a specific citation to record material properly considered on summary judgment." *Id.* Finally, "[t]he court shall have no independent duty to search or consider any part of the record not specifically referenced in the parties' separate statement of facts." *Id.*

Nevertheless, the factual assertions contained in the verified pleadings and affidavits filed by a pro se litigant generally will be considered in the review of a summary judgment motion. That is, where a pro se litigant has failed to comply strictly with the summary judgment rules, this Court has considered the sworn assertions of record. *See Clarke v. Blais*, 473 F. Supp. 2d 124, 128-30 (D. Me. 2007) ("The First Circuit has not addressed this notice debate directly, but has said, in the summary judgment context, that unrepresented plaintiff's opposing affidavits and opposition papers are to be read 'liberally.'" (citing *Posadas de Puerto Rico, Inc. v. Radin*, 856 F.2d 399, 401 (1st Cir. 1988), and *Mas Marques v. Digital Equip. Corp.*, 637 F.2d 24, 27 (1st Cir. 1980)); *Demmons v. Tritch*, 484 F. Supp. 2d 177, 182-83 (D. Me. 2007).

## FACTUAL AND PROCEDURAL BACKGROUND[2]

Plaintiff is incarcerated at the Maine State Prison (MSP). (DSMF ¶ 1.) On May 25, 2018, Defendant Weddle, the MSP librarian, refused to provide Plaintiff access to medical and mental health publications via interlibrary loan.[3] (Amended Complaint, ECF No. 10,

---

[2] Except where noted, the recitation of the facts is taken from Defendants' Statement of Undisputed Material Facts (DSMF). (ECF No. 28.)

[3] Plaintiff was specifically seeking access to books pertaining to Osteomalacia and Autism Spectrum Disorder. (DSMF ¶ 4.) Osteomalacia is the softening of the bones, most often caused by a severe vitamin

4

¶ 5; DSMF ¶¶ 4-5.) On May 28, 2018, Plaintiff filed a grievance and requested that he be "provided access to any and all medical/mental health books via ILL." (DSMF ¶ 4.) The Grievance Review Officer denied the grievance, stating that the "[r]equest of any medical information needs to b[e] done by meeting with a medical provider." (DSMF ¶ 7.)

Plaintiff appealed from the denial of his grievance, arguing that "[c]ensoring medical reference material is a blat[a]nt First Amendment violation." (DSMF ¶ 8.) The appeal was denied. (DSMF ¶ 9.) Plaintiff appealed again (DSMF ¶ 10), and Department of Corrections (DOC) Commissioner Joseph Fitzpatrick denied the appeal, stating:

> A prisoner is required to receive medical information from a facility medical provider for a number of valid reasons, including, but not limited to, that the facility medical providers are familiar with the prisoner's particular health care situation and can provide the most accurate information. A prisoner attempting to do his or her own research does not have the training to understand what he or she is reading and how (or even if) it applies to the prisoner's particular situation. This leads to prisoners making demands for unnecessary testing and treatment. In addition, prisoners use medical research as a way to fake symptoms in order to obtain drugs.

(DSFM ¶ 12.)

In his original complaint in this court, Plaintiff alleged that Defendants had violated his First Amendment rights when they denied him access to medical literature through the library service at the MSP. (ECF No. 1.) After reviewing the complaint pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(a), I recommended that the Court dismiss the complaint because there is no constitutional requirement that Defendants provide inmates with a

---

D deficiency. *See* https://www.mayoclinic.org/diseases-conditions/osteomalacia/symptoms-causes/syc-20355514.

medical reference library. (ECF No. 9.) Plaintiff subsequently filed an amended complaint in which complaint he alleged that the DOC maintains "a blanket ban on any and all medical or mental health reference materials regardless of how that material is obtained, which presumably extends to materials received through the mail." (ECF No. 10, ¶ 6; DSMF ¶ 23.) Following a review of the amended complaint, I recommended that the Court dismiss Plaintiff's claims, except for his "mail-related claim regarding his access to medical reference material," because the Court could not determine based on the allegations in the amended complaint whether the restriction was reasonably related to legitimate penological interests. (ECF No. 13.) The Court affirmed the recommended decision. (ECF No. 15.) Defendants now move for summary judgment on Plaintiff's mail-related claim.

## DISCUSSION

### I. Exhaustion of Administrative Remedies

Defendants first argue that summary judgment is appropriate because Plaintiff did not exhaust the available administrative remedies before he commenced this action. Federal law requires a prisoner to exhaust the available administrative remedies before initiating a lawsuit pursuant to 42 U.S.C. § 1983. Specifically, "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a); *see also Jones v. Bock,* 549 U.S. 199, 211 (2007) ("There is no question that exhaustion is

mandatory under the PLRA [Prison Litigation Reform Act] and that unexhausted claims cannot be brought in court.").

The Supreme Court has held that § 1997e(a) requires "proper exhaustion" of a prisoner's administrative remedies. *Woodford v. Ngo*, 548 U.S. 81, 93 (2006). "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Id.* at 90 – 91. "Compliance with prison grievance procedures … is all that is required … to 'properly exhaust.'" *Jones*, 549 U.S. at 218. "[I]t is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Id.*

A defendant may raise the § 1997e exhaustion requirement as an affirmative defense. *Jones v. Bock*, 549 U.S. 199, 216 (2007); *see also Ramos v. Patnaude*, 640 F.3d 485, 488 (1st Cir. 2011) ("The Supreme Court made it plain … that exhaustion under § 1997e(a) is not a jurisdictional condition, and has held it to be an affirmative defense." (citing *Jones,* 549 U.S. at 212)). Because failure to exhaust administrative remedies is an affirmative defense rather than a jurisdictional issue, initially, Defendants bear the burden of proof. *Jones*, 549 U.S. at 216. To satisfy that burden, Defendants must establish "that there was an available administrative remedy, and that the prisoner did not exhaust that available remedy." *Albino v. Baca,* 747 F.3d 1162, 1172 (9th Cir. 2014) (en banc).[4]

---

[4] To be an available remedy, a grievance procedure must actually apply to the type of claim at issue. *Bean v. Barnhart*, No. 1:13-cv-00196-NT, 2015 WL 3935777, at *5 (D. Me. June 26, 2015) (citing *Booth v. Churner*, 532 U.S. 731, 736 n.4 (2001), and *Malik v. D.C.*, 574 F.3d 781, 785 (D.C. Cir. 2009)). *See also Davis v. Fernandez*, 798 F.3d 290, 294-95 (5th Cir. 2015) ("Whenever defendants claim a failure to exhaust,

7

"As long as there is a shared factual basis between the two, perfect overlap between the grievance and a complaint is not required by the PLRA…. Indeed, the PLRA does not require the grievance and complaint to be identical because inmates are required to complete the applicable administrative process (such as a grievance procedure) even when seeking a form of relief that the prison cannot provide, so long as the prison can afford some sort of relief." *Jackson v. Ivens*, 244 Fed. Appx. 508, 513 (3d Cir. 2007). In *Jackson*, the plaintiff filed a § 1983 lawsuit against a number of medical providers at the prison where he was incarcerated based on their delay in biopsying his swollen lymph nodes, thereby delaying his treatment for a serious medical condition. 244 Fed. Appx. at 513. The lower court granted summary judgment to the defendants, finding that the plaintiff had failed to exhaust his administrative remedies as required by the PLRA because his grievances were "unrelated to the delay in the performance of" the biopsy. *Id*. The Third Circuit reversed, finding that because the plaintiff's grievances addressed the defendants' failure to properly diagnose and treat the plaintiff, even though the failure to perform the biopsy was not specifically referenced, the grievances had "raised issues for which the prison system could take responsive action." *Id*. Therefore, the plaintiff had properly exhausted his administrative remedies. *Id*.[5]

---

they have the burden to prove that the plaintiff did not exhaust administrative remedies that were actually available to him.").

[5] Similarly, in *Abu-Jamal v. Kerestes*, 3:15-CV-00967, 2016 WL 3456935 (M.D. Pa. June 22, 2016), the defendants argued they were entitled to summary judgment for the plaintiff's failure to exhaust his administrative remedies on his claim concerning his Hepatitis C condition, where plaintiff had grieved only "in regard to medical staff's failure to properly diagnose and monitor [plaintiff's] health, causing [him] to suffer a diabetic shock." *Id*. at *3. After discussing the Third Circuit's reasoning in *Jackson*, the court rejected the defendants' argument, finding that plaintiff's "'compliance with the DOC grievance procedures

Here, Defendants argue that Plaintiff failed to raise in his grievance his alleged inability to obtain medical literature through the mail and, therefore, he has failed to exhaust the available administrative remedies with respect to that issue.[6] In his initial grievance, Plaintiff stated that he "was notified by the Librarian that she refused to provide [him] access to any and all available titles via inter library loan that pertain to medical or mental health information." (DSMF ¶ 5.) Plaintiff asked that he be "provided access to any and all medical/mental health books via ILL." (DSMF ¶ 6.)

Plaintiff contends that Defendants generated the issue in their responses to his original grievance and appeal, thereby broadening the scope of his initial grievance. (*See* ECF No. 50, ¶ 4.) Defendant Waddle, in response to Plaintiff's initial grievance, stated: "If you wish to have information related to any medical concerns, you need to submit a written request for a meeting with a medical provider." (ECF No. 31-3, # 142.) The DOC's denial of Plaintiff's grievance and its response to the subsequent appeals reiterated the same basic rule—requests for medical information by prisoners must be made to a facility medical provider. (DSFM ¶¶ 7-12.)

The record is arguably ambiguous as to whether Plaintiff's grievance included the specific claim asserted in this case. That is, whether Plaintiff's request to obtain the

---

was substantial and certainly adequate to have exhausted his administrative remedies'" given that "the factual basis of his grievance and of a significant part of this case are grounded in medical conditions, their potentially complex interrelationships, and their treatment in light thereof." 2016 WL 3456935, at *4 (quoting *Douglas v. Byunghak Jin*, No. CIV.11-0350, 2014 WL 811803, at *5 (W.D. Pa. Mar. 3, 2014).

[6] Defendants also argue that Plaintiff never claimed to have attempted to order medical reference materials through regular prison mail.

literature through interlibrary loan was sufficient to exhaust the available administrative remedies regarding a First Amendment mail-related claim would likely require further development of the record. For instance, questions regarding the nature and scope of the interlibrary loan program and Plaintiff's understanding of the program remain. Summary judgment based on Plaintiff's alleged failure to exhaust the available administrative remedies, therefore, is not warranted.

## II. Penological Interests

Defendants contend that the are entitled to summary judgment because the record establishes that the DOC's policy that requires an inmate to consult with the prison's medical providers is reasonably related to legitimate penological interests.

"[T]he constitutional validity of prison practices that impinge upon a prisoner's rights with respect to [incoming] mail," *Brewer v. Wilkinson*, 3 F.3d 816, 824 (5th Cir. 1993), is determined by whether the practice is "reasonably related to a legitimate penological interest," *Thornburgh v. Abbott*, 490 U.S. 401, 409 (1989) (quoting *Turner v. Safley*, 482 U.S. 78, 89 (1987)). In determining the constitutionality of a practice, a court must consider

> (1) [w]hether there is a valid, rational connection between the regulation and the legitimate government interest put forward to justify it; (2) whether alternative means to exercise the right exist; (3) the impact that accommodating the right will have on prison resources; and (4) the absence of alternatives to the prison regulation.

*Kuperman v. Wrenn*, 645 F.3d 69, 74 (1st Cir. 2011) (citing *Turner*, 482 U.S. at 89-90) (the *Turner* factors).

The burden, however, "is not on the State to prove the validity of prison regulations but on the prisoner to disprove it." *Overton v. Bazzetta*, 539 U.S. 126, 132 (2003). Moreover, courts "must accord substantial deference to the professional judgment of prison administrators, who bear a significant responsibility for defining the legitimate goals of a corrections system and for determining the most appropriate means to accomplish them." *Id*.

With respect to the first *Turner* factor, a policy "cannot be sustained" if "the logical connection between the regulation and the asserted goal is so remote as to render the policy arbitrary or irrational." *Turner*, 482 U.S. at 89-90. Additionally, the objectives of the policy must be "legitimate and neutral." *Id*. at 90. The inquiry is thus whether the regulation of the Plaintiff's First Amendment rights "operates in a neutral fashion, without regard to the content of the expression." *Id*. As Commissioner Fitzpatrick stated in his response to Plaintiff's grievance appeal, the DOC limitation on prisoner access to medical reference materials is premised on two concerns: (1) prisoners demanding unnecessary medical testing and treatment, and (2) prisoners using the materials to learn how to mimic symptoms and thereby fraudulently obtain medication.[7] (DSMF ¶ 12.) The connection between DOC's interests and limiting prisoner access to medical reference materials is logical and therefore credible. *See Beard v. Banks*, 548 521, 531-32 (2006) (finding

---

[7] Defendants cite DOC Policy 21.2 as the basis for the restriction, which provides that "[p]ublications and other materials, including correspondence, sent to prisoners are prohibited if they contain any of the following: ….any … material that is determined by the Chief Administrative Officer, or designee, to: i) constitute a threat to safety, security, or the orderly management of the facility; [or] … iii) facilitate criminal activity …." (*See* ECF No. 29-1 at #110.)

credible the statement of a deputy prison superintendent that the regulations at issue "serve[d] the function identified" because the asserted connection was logical). The asserted objectives of the policy, to prevent overburdening facility medical providers and to prevent facilitating drug abuse, are legitimate. *See Rodriguez v. James*, 823 F.2d 8, 12 (2d Cir. 1987) (the interests of prison administrators "in preventing fraud or profligacy by inmates, and thereby promoting the penological objectives of 'security, order, and rehabilitation,' cannot seriously be questioned.") (quoting *Procunier v. Maritnez*, 416 U.S. 396, 413)). Moreover, the policy operates in a neutral fashion, and does not distinguish among types or categories of medical information that could be requested. Plaintiff has offered no argument to the contrary.

Under the second *Turner* factor, if "other avenues" remain available for Plaintiff to gain access to medical reference material, the Court "should be particularly conscious of the 'measure of judicial deference owed to corrections officials … in gauging the validity of the regulation.'" *Turner*, 482 U.S. at 90. Although Plaintiff does not assert that he has attempted to obtain medical information through prison medical providers, under DOC policy, that avenue remains open to him.[8]

As to the third *Turner* factor, courts should consider "the impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally." *Turner*, 482 U.S. at 90. Because a prison is a "closed

---

[8] Plaintiff also apparently retains access to incoming mail as a general matter. *See Josselyn v. Dennehy*, 333 Fed. Appx. 581, 585 (1st Cir. 2009) (access to other publications through the mail a relevant alternative to the prohibited material sought by prisoner).

12

environment[,] … few changes will have no ramifications on the liberty of others or on the use of the prison's limited resources for preserving institutional order." *Id*. "When accommodation of an asserted right will have a significant 'ripple effect' on fellow inmates or on prison staff, courts should be particularly deferential to the informed discretion of corrections officials." *Id*. As noted, the potential serious consequence of accommodating requests such as Plaintiff's request include imposing an unreasonable burden on the prison's limited medical resources and providing a means for prisoners to obtain drugs for which there is no medical need.

Under the final *Turner* inquiry, "the existence of obvious, easy alternatives may be evidence that the regulation is not reasonable, but is an 'exaggerated response' to prison concerns." *Turner*, 482 U.S. at 90. This, however, "is not a 'least restrictive alternative' test: prison officials do not have to set up and then shoot down every conceivable alternative method of accommodating the [plaintiff's] constitutional complaint." *Id*. at 90-91. Here, Plaintiff points to no alternative that "fully accommodates [his] rights at *de minimus* cost to valid penological interests …." *Id*. at 91.

In sum, Plaintiff has not satisfied his burden to disprove the validity of the DOC's policy. To the contrary, the record establishes that the DOC's policy that governs an inmate's ability to obtain medical literature is reasonably related to legitimate penological interests. Defendants, therefore, are entitled to summary judgment.

## CONCLUSION

Based on the foregoing analysis, I recommend the Court grant Defendants' Motion for Summary Judgment. (ECF No. 27.)

**NOTICE**

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum within fourteen (14) days of being served with a copy thereof. A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.

/s/ John C. Nivison
U.S. Magistrate Judge

Dated this 8th day of October, 2019.